**Electronically Filed
Intermediate Court of Appeals
29836
23-JUL-2013
08:46 AM**

NO. 29836

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


REDEMPTION BIBLE COLLEGE; HIS HIGHEST PRAISE
PENTECOSTAL HOLINESS CHURCHES, INC., a dissolved Hawai'i
non-profit corporation; and PHILLIP ELLSWORTH, PAMELA YUEN
and CHRISTOPHER YUEN, in their capacities as Trustees,
Plaintiffs-Appellants,
vs.
THE INTERNATIONAL PENTECOSTAL HOLINESS CHURCH,
an Oklahoma Corporation; and RONALD W. CARPENTER, SR.,
Defendants-Appellees,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10;
DOE PARTNERSHIPS 1-10; DOE LIMITED LIABILITY PARTNERSHIPS 1-10;
DOE LIMITED LIABILITY COMPANIES; and DOE UNINCORPORATED ENTITIES
1-10, Defendants.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 07-1-0825)


MEMORANDUM OPINION
(By: Nakamura, C.J., and Foley and Leonard, JJ.)


Plaintiffs-Appellants Redemption Bible College (RBC),
His Highest Praise Pentecostal Holiness Churches, Inc., a
dissolved Hawai'i non-profit corporation (HHPPHC), and Phillip
Ellsworth, Pamela Yuen, and Christopher Yuen in their capacities
as Trustees (collectively, "Plaintiffs") appeal from the
"Judgment for Possession as to 361 N. Kainalu Drive, Kailua,
Hawaii 96734" (Judgment for Possession) filed in the Circuit

Court of the First Circuit (Circuit Court).[1] The Judgment for Possession was entered against RBC and in favor of Defendant-Appellee The International Pentecostal Holiness Church, an Oklahoma Corporation (IPHC).

This appeal involves a dispute over the ownership of real property located at 361 N. Kainalu Drive, Kailua, Hawai'i (361 Property). The Circuit Court's Judgment for Possession was based on its grant of summary judgment in favor of Defendants-Appellees IPHC and Ronald W. Carpenter, Sr. (Carpenter), (collectively, "Defendants") on their claim that IPHC, and not HHPPHC, held valid title to the 361 Property.[2]

On appeal, Plaintiffs contend that the Circuit Court erred in granting summary judgment in favor of Defendants because there were genuine issues of material fact regarding whether IPHC or HHPPHC has valid title to the 361 Property. Plaintiffs also contend that the Circuit Court erred in denying their cross-motion for summary judgment, in which they asserted that title to the 361 Property had been improperly conveyed to IPHC. As explained below, we conclude that there were genuine issues of material fact concerning whether IPHC or HHPPHC has title to the 361 Property and therefore the Circuit Court erred in granting summary judgment and issuing the Judgment for Possession in favor of IPHC.

BACKGROUND

I.

A.

IPHC is an international church organized under and governed by the "Manual of the International Pentecostal Holiness Church" (Manual), which serves as IPHC's constitution. The three main organizational bodies of IPHC are the local church (church), the quadrennial conference (conference), and the General

---

[1] The Honorable Victoria S. Marks presided.

[2] HHPPHC had permitted RBC to use the 361 Property.

Conference. The General Conference is the highest body in the IPHC, and the conferences function as state-level organizations comprised of several local churches and ministers. When a local church is established in an area where no conference has been established, the new church becomes, by default, part of a conference known as the Home Missions Conference. The Manual specifies that all property held by the local churches and conferences are held in trust for IPHC.

B.

In 1968, IPHC acquired title to property located at 349/355 N. Kainalu Drive, Kailua, Hawai'i (349/355 Property) and began using it as the site of a local IPHC church, The Good Shepherd Pentecostal Holiness Church (Good Shepherd Church). The Good Shepherd Church was IPHC's first presence in Hawai'i.

In 1976, the 361 Property, which adjoins the 349/355 Property, went up for sale. Because IPHC had a desire to establish an independent Christian school, IPHC (under its prior name, Pentecostal Holiness Church) entered into an agreement of sale to purchase the 361 Property from Carden, Inc. (Carden). The sales price was $210,000 with a $45,000 down payment. IPHC used loan proceeds from a mortgage of the 349/355 Property for the down payment to purchase the 361 Property. IPHC did not make any payments on that mortgage. Carden had been using the 361 Property to operate the Hawaii Child Centers (HCC), and IPHC agreed to lease the 361 Property back to HCC. The final payment date for the agreement of sale and the lease term was extended several times to 1989, and the balance due on the agreement of sale was reduced to $93,425.48.

C.

In 1977, Leon Stewart (Stewart), who was then the Director of Evangelism and Assistant General Superintendent of IPHC,[3] recruited Adrian Yuen to be a pastor for the Good

---

[3] In 1973, Stewart began serving as the Director of Evangelism and Assistant General Superintendent of the Pentecostal Holiness Church, the

(continued...)

3

Shepherd Church and to establish and operate a Christian school on the IPHC's property. In 1978, IPHC appointed Adrian Yuen as the Pastor of the Good Shepherd Church. Adrian Yuen, with permission from Stewart and with funds donated by A. Joel Criz (Criz), a member of the Good Shepherd Church, constructed a school on the 349/355 Property at a cost of over $200,000. The school was placed under the ownership and operation of RBC and became known as Redemption Academy.

In 1986, IPHC formed a conference in Hawai'i called "The Hawai'i Conference of the Pentecostal Holiness Church" to function as the conference corporation for real estate purposes under the Manual. In 1989, IPHC directed Adrian Yuen to form HHPPHC. On January 27, 1989, Adrian Yuen prepared and filed HHPPHC's articles of incorporation, which stated that:

> The Corporation shall represent the Pentecostal Holiness Church denomination as the Conference organization in the State of Hawaii. The Corporation shall be subject to the Manual of the [IPHC] (the "Manual"). The Director of the Department of Evangelism of the [IPHC] shall be the Interim Conference Superintendent until such time as the Corporation is a conference which qualifies to have its Superintendent elected under the "Manual".

In 1989, at IPHC's request and in satisfaction of the agreement of sale, Carden conveyed the 361 Property to HHPPHC by warranty deed filed in Land Court as Document No. 1693865. The Warranty Deed transferring the 361 Property to HHPPHC states that IPHC "does quitclaim and set over unto [HHPPHC] and [its] legal successors and assigns all of [IPHC's] interest in and to the premises[.]" IPHC's President and Secretary, B.E. Underwood[4] and Jack D. Goodson, signed the Warranty Deed. HHPPHC borrowed money to satisfy the final payment under the agreement of sale, using the 361 Property as collateral.

---

[3] (...continued)
predecessor of the International Pentecostal Holiness Church. Stewart held those positions at the Pentecostal Holiness Church and IPHC from 1973 to 1981. From 1981 to 1989, Stewart served as the General Superintendent of IPHC.

[4] B.E. Underwood succeeded Stewart as the General Superintendent of IPHC in 1989. Underwood also served as the President of IPHC.

HHPPHC remained a valid Hawai'i corporation until November 21, 2003, when the State administratively dissolved HHPPHC for failure to file its corporate reports for several years. Upon dissolution, the State designated the last directors of HHPPHC, Phillip Ellsworth, Luigi Figueroa, Pamela Yuen, Yvonne Lopez and Christopher Yuen, as trustees for the dissolved corporation.

On July 8, 2005, Adrian Yuen terminated his affiliation with IPHC. Soon after Adrian Yuen's departure from IPHC, the IPHC General Executive Board dissolved the conference covering the Hawaiian/Pacific Islands and appointed HHPPHC to the Hawaiian District of the IPHC's Home Missions Conference. The Home Missions Conference Board elected new HHPPHC board members, who in turn elected Carpenter as President of HHPPHC on June 7, 2006. On July 7, 2006, Carpenter, as HHPPHC's new President, conveyed the 361 Property from HHPPHC to IPHC by Warranty Deed, which was filed in the Land Court as Document No. 3465220 on August 10, 2006. IPHC was identified as the owner of the 361 Property in Transfer Certificate of Title (TCT) No. 817,800 issued by the Land Court on August 10, 2006.

II.

On May 8, 2007, Plaintiffs filed a complaint against Defendants with respect to the 361 Property and the 349/355 Property, alleging fraud and misrepresentation, and seeking recovery for damages to RBC, injunctive relief, declaratory relief, and punitive damages. Defendants answered the complaint and asserted a counterclaim against Plaintiffs for ejectment, declaratory relief, breach of fiduciary duties, and trespass to realty.

On March 4, 2009, Defendants moved the Circuit Court for summary judgment on the issue of which party had valid title to and the right to possession of the 361 Property. Defendants argued that (1) its ownership of the 361 Property was conclusively established by Land Court TCT No. 817,800, which identifies IPHC as the owner of the property; and (2) Carpenter's

5

conveyance of the 361 Property from HHPPHC to IPHC was proper under the Manual, which applies to IPHC conferences and churches. Plaintiffs opposed Defendants' summary judgment motion, arguing that (1) TCT No. 817,800 was not conclusive evidence of IPHC's ownership of the 361 Property because IPHC's warranty deed was obtain by fraud; and (2) the Manual did not authorize Carpenter's actions in conveying the property because HHPPHC was not an IPHC conference or church.

In opposing Defendants' summary judgment motion, Plaintiffs submitted the declaration of Stewart, in which Stewart stated as follows:

> 12. While I was the General Superintendent of IPHC a decision was made that the pending acquisition of the 361 Property required the creation of new entity unconnected and totally independent of IPHC to take title to the 361 Property and to obtain a loan to pay off the balance due.

> 13. I was informed that [HHPPHC] was created for those purposes. Title to the 361 Property was conveyed to [HHPPHC] by way of a Warranty Deed in October, 1989. This conveyance was to completely separate IPHC from the school. IPHC did not retain any interest or rights to the 361 Property under any theory.

> 14. [HHPPHC] was not a church and under the IPHC Manual could not qualify as a conference. In 1986 an entity by the name of The Hawaii Conference of the Pentecostal Holiness Church ("HCP"), a Hawaii nonprofit corporation, had been created to function as the conference corporation for real estate purposes. The 361 Property had not been conveyed to HCP because the 361 Property was never intended to be under any control then, or later, by IPHC. This was my understanding as General Superintendent and I believe this understanding was shared by my successor, Bishop Underwood.

Plaintiffs also submitted the declaration of Adrian Yuen, in which he asserted that the purpose for creating HHPPHC was solely to hold title to the 361 Property. Adrian Yuen explained that he made a mistake in drafting HHPPHC's articles of incorporation to state that HHPPHC was a conference organization subject to the Manual:

> 11. I am not an attorney and had no experience or understanding of the formation of a corporation except for the formation of the Hawaii Conference of the Pentecostal Holiness Church in 1986. Being pressed by IPHC to form a new entity, I simply took the Petition for The Hawaii

6

> Conference of the Pentecostal Holiness Church and prepared Articles of Incorporation for [HHPPHC] duplicating the Section relating to purposes. Mr. Simmons, who I believe was still the Director of the Department of Evangelism, played no role in the formation or operation of [HHPPHC].

Adrian Yuen further stated:

> 14. [HHPPHC] never held itself out as a church or a conference, nor did it function as a church or conference. The corporation did not qualify as a church or a conference under the Manual.

Plaintiffs argued that there were genuine issues of material fact that precluded summary judgment in favor Defendants. Plaintiffs also asserted a cross-motion for summary judgment, contending that they had shown as a matter of law that Carpenter's conveyance of the 361 Property to IPHC was improper.

At the hearing on the motion and the cross-motion, the Circuit Court orally ruled that it was granting Defendants' motion for summary judgment, and it later filed a written order granting Defendants' motion for summary judgment as to all claims set forth in Plaintiffs' complaint. IPHC filed a motion for partial summary judgment, seeking possession of the 361 Property. The Circuit Court issued an order granting this motion and decreeing that IPHC was entitled to recover possession of the 361 Property. On June 16, 2009, the Circuit Court filed its Judgment for Possession, and this appeal followed.[5]

DISCUSSION

I.

We review a trial court's grant or denial of summary judgment _de novo_, using the same standard applicable to the trial court. <u>Querubin v. Thronas</u>, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005); <u>Iddings v. Mee-Lee</u>, 82 Hawai'i 1, 5, 919 P.2d 263, 267 (1996).

---

[5] Plaintiffs filed a prior appeal from the Circuit Court's decisions regarding the 349/355 Property. This court affirmed the Circuit Court's Judgment for Possession and partial summary judgment order in favor of Defendants with respect to the 349/355 Property. <u>Redemption Bible College v. International Pentecostal Holiness Church</u>, No. 28839, 2010 WL 1973639, (Hawai'i App. May 18, 2010).

7

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Querubin, 107 Hawai'i at 56, 109 P.3d at 697 (block quote format, citation and brackets omitted). "[A]ny doubt concerning the propriety of granting the motion should be resolved in favor of the non-moving party." GECC Fin. Corp. v. Jaffarian, 79 Hawai'i 516, 521, 904 P.2d 530, 535 (App. 1995).

II.

In their motion for summary judgment and on appeal, Defendants argue that Land Court TCT No. 817,800, which identified IPHC as the owner of the 361 Property, is conclusive evidence of IPHC's ownership of the 361 Property. Hawaii Revised Statutes (HRS) § 501-82(a) (2006) provides that

> [e]very applicant receiving a certificate of title in pursuance of a decree of registration, and every subsequent purchaser of registered land who takes a certificate of title for value and in good faith, hold the same free from all encumbrances except those noted on the certificate in the order of priority of recordation, and any of the [enumerated statutory] encumbrances . . . .

The Hawai'i Supreme Court had stated that "a certificate of title is unimpeachable and conclusive except as otherwise provided by law[.]" Honolulu Memorial Park, Inc. v. City and County of Honolulu, 50 Haw. 189, 192, 436 P.2d 207, 210 (1967) (quoting In re Bishop Trust Co., 35 Haw. 816, 825 (Haw. Terr. 1941)).

However, there is an exception to the "unimpeachable and conclusive" nature of a certificate of title for cases of registration procured by fraud. HRS § 501-106(b) (2006) provides:

> The new certificate or memorandum shall be binding upon the registered owner and upon all persons claiming

8

under the registered owner, in favor of every purchaser for value and in good faith; provided that in all cases of registration procured by fraud the owner may pursue all the owner's remedies against the parties to the fraud, without prejudice however to the rights of any innocent holder for value of a certificate of title; and provided further that after the transcription of the decree of registration on the original application any subsequent registration under this chapter procured by the presentation of a forged deed or other instrument, shall be void.

See also, Honolulu Memorial Park, 50 Haw. at 192-93, 436 P.2d at 210 ("[E]very subsequent purchaser of registered land who takes a certificate of title for value, except in cases of fraud to which he is a party, is entitled under the provisions of [the predecessor of HRS § 501-82] to hold the same free from all encumbrances except those noted on the certificate and the statutory encumbrances enumerated." (quoting In re Bishop Trust, 35 Haw. at 825)).

In their complaint, Plaintiffs alleged that TCT No. 817,800 identifying IPHC as the owner of the 361 Property was fraudulently obtained by Defendants.  Plaintiffs alleged that: (1) without authorization and in violation of HHPPHC's bylaws, Defendants purported to have replaced HHPPHC's directors and selected Carpenter as President; (2) without notice to HHPPHC, Carpenter, claiming to be President of HHPPHC, executed a warranty deed conveying the 361 Property to IPHC; (3) the actual and legitimate directors of HHPPHC never selected Carpenter as President of HHPPHC and did not authorize him to execute the warranty deed on behalf of HHPPHC; and (4) the warranty deed, on which the issuance of TCT No. 817,800 was based, was fraudulent and contained a "false swearing."

Defendants are not subsequent purchasers for value of the 361 Property, but rather are alleged by Plaintiffs to be parties who obtained title to the 361 Property by fraud.  We conclude that if Plaintiffs are able to prove the allegations in their complaint, then TCT No. 817,800 would be subject to impeachment and would not constitute conclusive evidence of IPHC's ownership of the 361 Property.

III.

Plaintiffs' claim that IPHC's title to the 361 Property is invalid and was obtained by fraud turns on whether Carpenter was authorized to execute the warranty deed to transfer the 361 Property from HHPPHC to IPHC.  In moving for summary judgment, Defendants asserted that the warranty deed by Carpenter was a valid conveyance because HHPPHC was a conference subject to the Manual.  Pursuant to the Manual, when the General Conference determines that a conference ceases to use church property in accordance with the faith and Manual, title to such property will vest in the General Conference.  IPHC relied upon procedures set forth in the Manual to replace the HHPPHC board members with new board members, to elect Carpenter as President of HHPPHC, and to have Carpenter convey the 361 Property from HHPPHC to IPHC. However, if HHPPHC was not a conference subject to the Manual, arguably then Carpenter was not authorized to convey the 361 Property from HHPPHC to IPHC.

In opposition to Defendants' motion for summary judgment, Plaintiffs presented evidence that HHPPHC was not a conference subject to the Manual and that Defendants knew HHPPHC was not a conference subject to the Manual.  Defendants submitted the declaration of Stewart, the General Superintendent of IPHC at the time HHPPHC was incorporated, who stated that HHPPHC was created to be an entity independent of IPHC to take title to the 361 Property and to separate IPHC from the planned school, and that "[HHPPHC] was not a church and under the IPHC Manual could not qualify as a conference."  Plaintiffs also submitted the declaration of Adrian Yuen, who asserted that HHPPHC did not qualify or function as a conference or a church and explained why the reference to HHPPHC as a conference subject to the Manual was a drafting mistake.  In addition, both Stewart and Adrian Yuen cited to requirements for a conference in the Manual in explaining why HHPPHC did not qualify as a conference. Plaintiffs presented other evidence that supported their claim that HHPPHC was not a conference and Defendants were aware that

HHPPHC was not a conference. Plaintiffs cited IPHC's establishment of the Hawai'i Conference of the Pentecostal Holiness Church three years before HHPPHC was incorporated and the failure of the warranty deed to include language suggested by the Manual for property being conveyed for the use and benefit of IPHC.

IPHC contends that HHPPHC's status as a conference is established by its articles of incorporation, which refers to HHPPHC as a conference subject to the Manual. However, a corporation cannot unilaterally pronounce itself to be a conference of the IPHC. Aside from HHPPHC's articles of incorporation, IPHC did not provide internal documentation or other evidence which states or shows that HHPPHC was a conference. IPHC also did not produce evidence to refute the declarations of Stewart and Adrian Yuen.

Viewed in the light most favorable to Plaintiffs, we conclude that there were genuine issues of material fact concerning: (1) whether HHPPHC was a conference subject to the Manual; and (2) if HHPPHC was not a conference, whether Plaintiffs knew HHPPHC was not a conference and therefore that Carpenter was not authorized to execute the warranty deed, which is relevant to whether IPHC obtained TCT No. 817,800 and title to the 361 Property by fraud. Accordingly, we conclude that the Circuit Court erred in granting summary judgment in favor of Defendants and in entering the Judgment for Possession with respect to the 361 Property.[6]

---

[6] Defendants argue that we should give deference to IPHC's decisions under the doctrine which "requires that civil courts defer to the resolution of issues of religious doctrine or polity by the highest court of a hierarchical church organization." Jones v. Wolf, 443 U.S. 595, 602 (1979). However, this doctrine does not proscribe a court's power to determine property disputes between church bodies where "neutral principals of law" are used. See id. at 599-604. Here, we conclude that the parties' property dispute can be resolved through the use of neutral principles of law, and thus the doctrine cited by Defendants does not alter our conclusion that there were genuine issues of material fact that precluded the grant of summary judgment.

CONCLUSION

We vacate the Circuit Court's Judgment for Possession with respect to the 361 Property and the orders granting summary judgment and partial summary judgment on which the Judgment for Possession was based, and we remand the case for further proceedings consistent with this Memorandum Opinion.

DATED: Honolulu, Hawai'i, July 23, 2013.

On the briefs:

Burt L. Snyder
for Plaintiffs-Appellants

David A. Nakashima
Zachary A. McNish
J.D. Ferry
(Alston Hunt Floyd & Ing)
for Defendants-Appellees

*Craig H. Nakamura*
Chief Judge

Associate Judge

Associate Judge